**The COUNCIL OF INSURANCE AGENTS & BROKERS, Plaintiff,**

v.

**Dorelisse JUARBE–JIMENEZ, Defendant.**

**No. CIV. 04–1556(JAF).**

United States District Court, D. Puerto Rico.

March 30, 2005.

---

Guillermo J. Ramos–Luina, Rivera, Tulla & Ferrer, Hato Rey, PR, PHV Daniel S. Blynn, PHV Scott A. Sinder, Collier Shannon Scott PLLC, Washington, DC, for Plaintiff.

Leila Alvarado–Gonzalez, Lag Legal Partners & Services, Noel Gonzalez–Miranda, Noel S. Gonzalez Miranda Law Office, San Juan, PR, for Defendant.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Council of Insurance Agents + Brokers, brings the present action against Defendant, Dorelisse Juarbe–Jiménez, the Insurance Commissioner of Puerto Rico, alleging violations under the Privileges and Immunities Clause and Equal Protection Clause of the United States Constitution. *Docket Document No. 1.* Plaintiff seeks, inter alia, declaratory and injunction relief. *Id.*

Defendant moves for summary judgment, arguing that Plaintiff lacks standing to bring the present complaint. *Docket Document No. 15.* Plaintiff opposes the motion and moves for summary judgment. *Docket Document No. 16.* Defendant filed an opposition to Plaintiff's cross-motion for summary judgment, *Docket Document No. 20,* and a separate response to Plaintiff's opposition to Defendant's summary judgment motion. *Docket Document No. 22.* Plaintiff filed a reply to Defendant's opposition to its cross-motion for summary judgment. *Docket Document No. 25.*

### I.

### *Factual and Procedural Synopsis*

We derive the following factual summary from Plaintiff's complaint, the statements of facts submitted by Defendant in its motion for summary judgment and by Plaintiff in its opposition and cross-motion for summary judgment. *Docket Document Nos. 1, 15, 16.*

Plaintiff is a trade organization founded in 1913, whose members are comprised of over 300 commercial insurance agencies and brokerage firms based outside of Puerto Rico. Plaintiff's members place over $80 Billion annually in insurance premiums, which represents over three-quarters of the premiums placed in the United States commercial marketplace. Plaintiff also represents its members' individual officers, directors, principals, and employees, who are licensed by the Office of the Insurance Commissioner of Puerto Rico to

act as nonresident insurance agents and brokers. These agents and brokers reside outside of Puerto Rico, but regularly sell insurance covering risks located partially or entirely within the Commonwealth.

Defendant is the Insurance Commissioner of Puerto Rico and is statutorily charged with administering the insurance laws in the Commonwealth of Puerto Rico under 26 P.R. LAWS ANN. § 203 (1997 & Supp.2001).

Under Puerto Rico law, insurance agents and brokers must be licensed by the Office of the Commissioner of Insurance of Puerto Rico. Insurers are prohibited from effectuating "any direct insurance upon or relative to any person, property, or other subject of insurance resident, located, or to be performed in Puerto Rico, except through a licensed agent of such insurer residing in Puerto Rico." 26 P.R. LAWS ANN. § 329(1). Those policies effectuated must be countersigned by the insurer's manager, general agent or licensed agent who resides in Puerto Rico. *Id.* § 329(2). Licensed nonresident agents and brokers may not solicit insurance in Puerto Rico, but are permitted to place insurance which has been directly procured from the insured outside of Puerto Rico. *Id.* § 927(1). Licensed nonresident insurance agents and brokers may only place insurance in Puerto Rico through a licensed resident agent or broker and such policies or contracts of insurance must be countersigned by a licensed Puerto Rico resident agent. *Id.* § 927(2).

Plaintiff challenges the statutes at issue under the Privileges and Immunities Clause and the Equal Protection Clause of the United States Constitution, arguing that the Puerto Rico statutes unlawfully discriminate solely on the basis of their residency. *Docket Document No. 1.* Plaintiff filed a complaint on June 15, 2004, requesting that we declare the disputed statutes unconstitutional and enjoin the Insurance Commissioner of Puerto Rico from taking any further action pursuant to these provisions. *Docket Document No. 1.* On January 18, 2005, Defendant moved for summary judgment claiming that Plaintiff lacks standing to pursue these claims on behalf of its members. *Docket Document No. 15.* On January 31, 2005, Plaintiff filed a joint opposition and a cross-motion for summary judgment. *Docket Document No. 16.* On March 7, 2005, Defendant filed an opposition to Plaintiff's cross-motion for summary judgment, *Docket Document No. 20,* and on March 10, 2005, filed a response to Plaintiff's opposition to Defendant's summary judgment motion. *Docket Document No. 22.* Plaintiff filed a reply to Defendant's opposition to its cross-motion for summary judgment. *Docket Document No. 25.* We consider the parties' dispositive motions in turn.

## II.

### *Motion for Summary Judgment Standard under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however the burden "may be discharged by showing that

there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* at 331.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella,* 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)).

## III.

### *Analysis*

### A. *Defendant's Summary Judgment Motion*

■ Defendant argues that we should dismiss Plaintiff's case, as Plaintiff lacks Article III standing. *Docket Document No. 15.* Pursuant to Article III of the Constitution, federal courts only have jurisdiction over actual cases or controversies. *See* U.S. CONST. art. III; *Am. Postal Workers Union v. Frank,* 968 F.2d 1373, 1374 (1st Cir.1992). "[S]tanding ... can be one of the controlling elements in the definition of a case or controversy under Article III," *ASARCO Inc. v. Kadish,* 490 U.S. 605, 613, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989), and "[s]tanding 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (internal citation

omitted). "Standing is a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" *N.H. Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 12 (1st Cir.1996)(quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." *United States v. AVX Corp.,* 962 F.2d 108, 113 (1st Cir. 1992). "[I]t is the burden of the 'party who seeks the exercise of jurisdiction in his favor' 'clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *FW/PBS, Inc.,* 493 U.S. at 231, 110 S.Ct. 596 (internal citations omitted).

■ "The 'irreducible constitutional minimum of standing' contains three requirements." *Donahue v. City of Boston,* 304 F.3d 110, 115 (1st Cir.2002) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). First, a plaintiff must show that he has "'suffered or is threatened by injury in fact to a cognizable interest.'" *Id.* (quoting *Save Our Heritage, Inc. v. Fed. Aviation Admin.,* 269 F.3d 49, 55 (1st Cir.2001)). Second, the asserted injury must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (citations and internal quotation marks omitted). Third, the plaintiff must show that it is likely and not just speculative, that "the injury will be redressed by a favorable decision." *Id.* at 561.

■ "Associational," or "representational," standing permits organizations, in certain circumstances, to premise standing entirely upon injuries suffered by their members. *Am. Postal Workers Union,* 968 F.2d at 1374. "This doctrine does not

eliminate the constitutional requirement of a live case or controversy between the parties, but it recognizes that injury to an organization's members may satisfy Article III and allow the organization to litigate in federal court on their behalf." *Id.* (citing *UAW v. Brock,* 477 U.S. 274, 281, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986)).

■ Courts employ a tripartite test to evaluate associational standing. *Id.* The plaintiff association must show that "(a) at least one of its members possesses standing to sue in his or her own right—i.e., that the member can satisfy the three requirements of injury, traceability and redressability; (b) the interests the suit seeks to vindicate are germane to its purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (citing *Brock,* 477 U.S. at 282, 106 S.Ct. 2523; *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *AVX Corp.,* 962 F.2d at 116).

■ Defendant alleges that Plaintiff has failed to demonstrate the first prong of the associational standing test, namely that at least one of its members has standing to sue in her or her own right. *Docket Document No. 15.* Specifically, Defendant avers that Plaintiff is unable to meet the "injury in fact" requirement necessary to establish standing. *Id.*[1]

■ In deciding whether the Plaintiff's members have standing to assert the claims of its own members and partners, we apply general third-party standing principles. *Council of Insurance Agents + Brokers. v. Gallagher,* 287 F.Supp.2d 1302, 1309 (N.D.Fla.2003). "An individual who asserts the constitutional rights of a third party must, of course, satisfy the Article III requirements of injury in fact, causation, and redressability with respect to the third-party claim. In addition, that party must satisfy the prerequisites that arise from prudential limitations on the jurisdiction of the federal courts, namely, that the litigant personally has suffered an injury in fact that gives rise to a sufficiently concrete interest in the adjudication of the third party's rights; that the litigant has a close relationship to the third party; and that some hindrance exists that prevents the third party from protecting its own interests." *Eulitt ex rel. Eulitt v. Maine, Dept. of Educ.,* 386 F.3d 344, 351 (1st Cir.2004) (internal citations omitted).

Here, the employers have suffered injury in fact of thousands of dollars in lost revenues. Further, the employees have both a financial ability to join in a trade association and the wherewithal to contest the issue at hand, which the employees likely lack; the employers are thereby highly effective proponents of their employees rights, and have a unique relationship with their employees. Finally, the employees are hindered in presenting their own rights, both because of their inability to finance the litigation and because regulated individuals may reasonably fear that there would be reprisal if they challenged the relevant positions of their regulator. *See Gallagher,* 287 F.Supp.2d at 1309.

■ In its opposition to Plaintiff's summary judgment motion, Defendant argues

---

1. Defendant cursorily argues that Plaintiff also fails to meet the second prong of the *Hunt* test. *Docket Document No. 15.* Defendant's single paragraph, citing no case law and stating only that Plaintiff's assertion that this litigation is germane to its organizational purpose "should not deserve any credit by the court," is insufficient to warrant our consideration. *Docket Document No. 15; see Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace." (internal citation and quotation omitted)).

that Plaintiff lacks standing because its members are not individuals. *Docket Document No. 20.* However, because "[t]he Council has associational standing to assert the rights of its members [a]nd the members have standing to assert the rights of their employees and partners . . . the Council thus has standing to assert the rights of the employees and partners." *Gallagher,* 287 F.Supp.2d at 1307 (discussing the use of stacking in fulfilling the first prong of the *Hunt* requirements); *Pa. Psychiatric Soc'y v. Green Spring Health Servs.,* 280 F.3d 278, 293 (3d Cir.2002) ("So long as the association's members have or will suffer sufficient injury to merit standing and their members possess standing to represent the interests of third parties, then associations can advance the third-party claims of their members without suffering injuries themselves.").

Plaintiff has shown that it satisfies the associational standing requirements and that its members would have standing to sue in their own right. Plaintiff has submitted uncontradicted evidence that its members have lost thousands of dollars as a result of the statutes in question, *Docket Document No. 16, Exh. 4,* and its members could properly assert the constitutional claims of its employees and partners. *See Council of Ins. Agents + Brokers v. Gallagher,* 287 F.Supp.2d 1302, 1307 (N.D.Fla.2003). As such, Plaintiff Council has standing to assert claims brought on behalf of Puerto Rico licensed, but nonresident, agents and brokers. *Id.* at 1310; *Council of Ins. Agents + Brokers v. Molasky–Arman,* 358 F.Supp.2d 981, 982 (D.Nev.2004). Defendant's summary judgment motion is, therefore, denied. *Docket Document No. 15.*

## B. *Plaintiff's Cross–Motion for Summary Judgment*

Plaintiffs similarly move for summary judgment, arguing that the Puerto Rico statute at issue and the burden it imposes on Puerto Rico licensed, but nonresident agents, violates the Privileges and Immunities Clauses and Equal Protection Clause of the United States Constitution. *Docket Document No. 16.*

### 1. *Privileges & Immunities Clause*

 Article IV, § 2 of the Constitution provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." " '[T]he Privileges and Immunities Clause was intended to create a national economic union,' " *Silver v. Garcia,* 760 F.2d 33, 36 (1st Cir.1985) (quoting *Supreme Court of N.H. v. Piper,* 470 U.S. 274, 279–80, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985)), and fuse together a collection of independent, sovereign states. *Piper,* 470 U.S. at 279, 105 S.Ct. 1272 (quoting *Toomer v. Witsell,* 334 U.S. 385, 395, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948)). Thus, "it is '[o]nly with respect to those privileges and immunities bearing on the vitality of the Nation as a single entity' that a State must accord residents and nonresidents equal treatment." *Piper,* 470 U.S. at 279, 105 S.Ct. 1272 (quoting *Baldwin v. Mont. Fist & Game Comm'n,* 436 U.S. 371, 383, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978)).

 The First Circuit has held that "the ability of a citizen of one state to act as an insurance consultant in another state must be considered a fundamental right or privilege protected by the privileges and immunities clause." *Silver,* 760 F.2d at 36. Because "insurance and occupation in the insurance industry are important to the national economy," *id.,* it is clear that the ability to act as an insurance agent or broker is also a fundamental right. However, in that the privileges and immunities clause is not absolute, the fact that the

opportunity to act as an insurance agent is a fundamental right does not prevent the states from regulating the activity in a manner which discriminates against non-residents. *Id.* Discrimination against non-residents is allowed where: (i) there is a substantial reason for the differential treatment; and (ii) the discrimination against nonresidents bears a substantial relationship to the state's objective. *Barnard v. Thorstenn,* 489 U.S. 546, 552, 109 S.Ct. 1294, 103 L.Ed.2d 559 (1989); *Silver,* 760 F.2d at 36.

Defendant asserts that it enforces the countersignature provisions of 26 P.R. Laws Ann. §§ 329 and 927 and that the statutes "ensure that the insurer, through its agent, be constantly accessible to the insured in order to adequately attend to the needs of its insured in Puerto Rico and protect its interests." *Docket Document No. 16, Exh. B.* Defendants provide that such geographical proximity between the insured and the agent is necessary notwithstanding the advances in modern communication including telephone, facsimile machine, and electronic mail. *Id.* Further, Defendant asserts that the statute also ensures that the agent is adequately able to communicate in Spanish with the insured, in case that the insured speaks Spanish only. *Id.*

■ Defendant's proffered explanations for the residency requirements are unconvincing. "[T]he notion that an agent cannot provide assistance outside his home state is nonsense; whatever may have been said when people traveled by horseback and communicated by regular mail, today people communicate by telephone and facsimile and e-mail and overnight courier, and they travel by jet; state boundaries pose no obstacle." *Gallagher,*

287 F.Supp.2d at 1312; *see Barnard,* 489 U.S. at 555, 109 S.Ct. 1294 (finding that geographical isolation provided no justification for prohibiting nonresidents from taking the Virgin Islands bar examination). Defendant's suggestion that the residency requirement is necessary to ensure agent proficiency in Spanish and that this is necessary to protect the insured interests, likewise falls flat. Although Spanish is widely spoken on the Island, both Spanish and English are the official languages of Puerto Rico. *Igartua de la Rosa v. United States,* 107 F.Supp.2d 140, 146 (D.P.R.2000). As such, many people reside for decades in Puerto Rico without ever become adept Spanish speakers. The Puerto Rico residency requirement does little to guarantee that resident agents will speak Spanish or to promote an efficacy in communication between the agent and the insured.[2] "In order for there to be a 'substantial reason for the difference in treatment,' nonresidents must be shown to constitute a 'peculiar source of the evil at which the statute is aimed.'" *Silver,* 760 F.2d at 38 (quoting *Toomer,* 334 U.S. at 398, 68 S.Ct. 1156). Defendant has failed to show that nonresidents are inherently less accessible or less able to communicate with their clients than Puerto Rico residents. In sum, there is no substantial purpose served by denying Puerto Rico-licensed agents living outside Puerto Rico the same rights and privileges given to Puerto Rico-licensed agents living in Puerto Rico. *See Gallagher,* 287 F.Supp.2d at 1313; *Molasky–Arman,* at 982.

As such, we conclude that the countersignature requirement for nonresidents violates Article IV, § 2 of the United States Constitution. *Id.*

---

2. Even if an alleged language barrier were to provide a substantial basis for enforcing a residency requirement, Puerto Rico could eas-

ily require candidates to pass a language proficiency examination. *See Silver,* 760 F.2d at 39.

### 2. *Fourteenth Amendment Equal Protection*

Having determined that the Puerto Rico countersignature requirement for nonresidents violates Article IV, § 2 Privileges and Immunities Clause, we need not also consider whether it withstands constitutional scrutiny under the Fourteenth Amendment's Equal Protection Clause. *See Gallagher*, 287 F.Supp.2d at 1313 (deeming a similar Florida statute unconstitutional under both the Privileges and Immunities Clause and Equal Protection Clause based on a single legal analysis).

### IV.

### *Conclusion*

In accordance with the foregoing, we **DENY** Defendant's motion for summary judgment, *Docket Document No. 15*, and **GRANT** Plaintiff's cross-motion for summary judgment. *Docket Document No. 16.* In so doing, we hereby declare that the countersignature requirements of 26 L.P.R.A. §§ 329 and 927 are unconstitutional to the extent that they deny Puerto Rico-licensed nonresident insurance agents the same rights and privileges that they afford Puerto Rico-licensed resident agents. The Defendant Insurance Commissioner of Puerto Rico is enjoined from denying to Puerto Rico-licensed nonresident agents the same rights and privileges possessed by Puerto Rico-licensed resident agents under the governing statutes. Judgment to be entered accordingly.

**IT IS SO ORDERED.**