# United States Court of Appeals

## For the First Circuit

No. 05-2607

COUNCIL OF INSURANCE AGENTS & BROKERS,
Plaintiff, Appellee,

v.

DORELISSE JUARBE-JIMÉNEZ, in her official capacity
as the Puerto Rico Commissioner of Insurance,
Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Selya, Circuit Judge,
Hansen,[*] Senior Circuit Judge,
and Lynch, Circuit Judge

Rosa Elena Pérez-Agosto, Assistant Solicitor General, Office of the Solicitor General, Department of Justice, Commonwealth of Puerto Rico, with whom Salvador Antonetti-Stutts, Solicitor General, and Mariana D. Negrón-Vargas, Deputy Solicitor General, were on brief, for appellant.
Scott A. Sinder, with whom Alysa N. Zeltzer, Daniel S. Blynn, Collier Shannon Scott, PLLC, and Guillermo Ramos Luiña were on brief, for appellee.

March 30, 2006

[*] Of the Eighth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**.  This appeal arises from the entry of an injunction based on a finding of facial unconstitutionality of provisions of the Puerto Rico Insurance Code which impose restrictions on the ability of <u>nonresident</u> licensed insurance agents and brokers to participate in the Puerto Rico insurance market, thus advantaging <u>resident</u> agents and brokers.

The suit was brought by the Council of Insurance Agents and Brokers, an association.  The defendant Puerto Rico Commissioner of Insurance moved for summary judgment on the ground that the Council lacked standing, and the Council filed a cross-motion for summary judgment.  The district court, in a thoughtful opinion, denied the Commissioner's motion and granted the Council's, holding that the Council had standing, that the challenged provisions were unconstitutional, and that declaratory and injunctive relief were warranted.  <u>See</u> <u>Council of Ins. Agents & Brokers</u> v. <u>Juarbe-Jiménez</u>, 363 F. Supp. 2d 47 (D.P.R. 2005).

On appeal, the Commissioner does not challenge the ruling that the statutes are unconstitutional under the Privileges and Immunities Clause (although she does question the language of the injunction).  At the heart of her appeal is her argument that the Council lacked standing to raise its challenge in the first place.  We disagree, and we affirm.

**I.**

The provisions challenged in this case are P.R. Laws Ann. tit. 26, §§ 329 and 927 (2003), which have the effect of requiring the business of insurance in Puerto Rico to be done by using agents resident in Puerto Rico. Section 329 provides that "[n]o insurer shall effectuate any direct insurance upon or relative to any person, property, or other subject of insurance resident, located, or to be performed in Puerto Rico, except through a licensed agent of such insurer residing in Puerto Rico."[1] P.R. Laws Ann. tit. 26, § 329(1). Furthermore, under § 329(2), all such policies and contracts must be countersigned by the insurer's manager, general agent, or authorized agent, who must reside in Puerto Rico.[2]

Section 927 prohibits nonresident agents and brokers from soliciting insurance and inspecting risks in Puerto Rico. Id. § 927(1). It allows nonresident agents and brokers to place insurance upon subjects located or to be performed in Puerto Rico only if the insurance was "directly procured from the insured outside of Puerto Rico," id., or if the nonresident agent or broker

---

[1] In addition, "[i]f the insured is represented by a licensed broker resident in Puerto Rico, such insurance may be effectuated through the insurer's manager, general agent, or licensed agent, resident in Puerto Rico." P.R. Laws Ann. tit. 26, § 329(1).

[2] Moreover, "[i]f any person, property or other material object subject to insurance that resides, is located in, or is to be carried out in Puerto Rico is also covered by an insurance policy placed or issued outside of Puerto Rico, the same must be countersigned" by a Puerto Rico resident. P.R. Laws Ann. tit. 26, § 329(2).

-3-

places the insurance "through a resident agent or broker of Puerto Rico, and in an insurer authorized to transact insurance in Puerto Rico," id. § 927(2). Countersigning can be done only by resident agents authorized by the insurer. Id. § 927(3).

The Council filed suit, arguing that these provisions violated both the Privileges and Immunities Clause, U.S. Const. art. IV, § 2, cl. 1, and the Equal Protection Clause, id. amend. XIV, § 1, because they gave local insurance agents and brokers an unfair competitive advantage over nonresident agents and brokers (even though the nonresident agents and brokers are licensed to sell insurance in Puerto Rico). The Council alleged that it represents hundreds of insurance agencies and brokerage firms; that its "member agencies and brokerages and their officers, directors, principals, and employees are located/reside outside of Puerto Rico but sell insurance in . . . the Commonwealth"; that its members and their individual associates,[3] some of whom are licensed in Puerto Rico, "are suffering immediate injury and are being deprived of significant rights" because of the challenged laws; and that one of the Council's central purposes is to protect the interests of its members and their individual associates. The Council sought declaratory and injunctive relief.

---

[3] We refer to the officers, directors, principals, and employees of the Council's members as "individual associates."

-4-

The Commissioner alleged in her answer that the Council lacked standing. She later moved for summary judgment on the same ground. Her argument was that the Council had not demonstrated that any of its members had suffered an injury in fact, which meant it had not shown that at least one of its members would otherwise have standing to sue in its own right, which meant the Council's claim of associational standing must fail.

The Council then filed a cross-motion for summary judgment and submitted a memorandum in opposition to the Commissioner's motion for summary judgment. The Council asserted that at least some of its entity members had standing to sue in their own right, on the ground that entity employers may assert the constitutional rights of their employees where violation of those rights adversely affects the financial interests or patronage of the business. The Council attached a declaration by Ken A. Crerar, the Council's President, which we describe in more detail below.

The Commissioner replied, arguing, inter alia, that the Council had not shown that any one of its members "as such" was licensed as a nonresident agent or broker in Puerto Rico. Therefore, she argued, none of the entity members could engage in the insurance business in Puerto Rico through its individual associates (even if the individual associates were licensed and could have acted in Puerto Rico on their own behalf), and none could have suffered any injury as a result of the challenged laws.

-5-

The Commissioner did not argue that she needed discovery on this matter. See Fed. R. Civ. P. 56(f). Nor did she argue that she had proof that none of the Council's members could have suffered injury.

The Council responded, attaching a supplemental declaration of Crerar, also described below.

The district court denied the Commissioner's motion and granted the Council's cross-motion for summary judgment. See Council of Ins., 363 F. Supp. 2d at 56. The court determined that the Council's members had third-party standing to assert the claims of their individual associates, reasoning that "the employers have suffered injury in fact of thousands of dollars in lost revenues," the employers' relationship with their employees made them effective advocates of the employees' interests, and the employees were ill-situated to press their own rights here. Id. at 53. The court concluded that the Council had associational standing to assert the rights of its members, and since the members had standing to assert the rights of their individual associates, the Council had standing to assert the individual associates' rights. Id. at 54.

As to the constitutionality of the challenged provisions, the district court determined that "the countersignature requirement for nonresidents" violated the Privileges and Immunities Clause. Id. at 55. It did not reach the equal

protection question.  <u>Id.</u> at 56.  The judgment repeated the final language of the court's opinion and order:

> [T]he countersignature requirements of . . . §§ 329 and 927 are unconstitutional to the extent that they deny Puerto Rico-licensed nonresident insurance agents the same rights and privileges that they afford Puerto Rico-licensed resident agents.  The . . . Commissioner . . . is enjoined from denying to Puerto Rico-licensed nonresident agents the same rights and privileges possessed by Puerto Rico-licensed resident agents under the governing statutes.

<u>Id.</u>

The Commissioner moved for reconsideration of the standing issue and for clarification of the judgment.  The Council opposed this motion, and it was denied.

## II.

We review de novo a district court's rulings on cross-motions for summary judgment, <u>see</u> <u>Calero-Cerezo</u> v. <u>U.S. Dep't. of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004), and (usually) its conclusions about standing, <u>see</u> <u>Donahue</u> v. <u>City of Boston</u>, 304 F.3d 110, 115 (1st Cir. 2002).  We may affirm the summary judgment order on any ground justified in the record, even if our rationale differs from the district court's.  <u>Houlton Citizens' Coal.</u> v. <u>Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999).

The litany on summary judgment is familiar.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the party moving for summary judgment "has asserted that no genuine issue of material fact exists," the party opposing summary judgment has the burden of pointing to "specific facts demonstrating that there is, indeed, a trialworthy issue." Calero-Cerezo, 355 F.3d at 19. We agree with the district court that the Commissioner not only failed to justify her own motion, but also failed to oppose adequately the Council's motion.

The general standing inquiry involving any plaintiff focuses on "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues"; it involves both "constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975). The constitutional constraints are designed to ensure compliance with Article III's "case or controversy" requirement; they require that the plaintiff allege a sufficient personal stake in the outcome of the controversy. See id.

The Supreme Court has outlined a three-part test for Article III standing to ensure that these constitutional limits are observed. "First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a)

concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (footnote, citations, and internal quotation marks omitted) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  "Second, there must be a causal connection between the injury and the conduct complained of"; in other words, the injury must be fairly traceable to the defendant's challenged action rather than to some third party's independent action.  Id. And third, it must be likely that a favorable decision will redress the injury.  Id.

The question of standing of plaintiff associations, while within the general rule, is subject to its own subset of rules. "Even in the absence of injury to itself, an association may have standing solely as the representative of its members."  Warth, 422 U.S. at 511; see also Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 126 S. Ct. 1297, No. 04-1152, 2006 U.S. LEXIS 2025, at *10 n.2 (March 6, 2006) (association of law schools and law faculties had associational standing to bring suit on behalf of its members).  There are three requirements for an association, which has not itself suffered injury, to have standing to bring suit on behalf of its members: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

-9-

requested requires the participation of individual members in the lawsuit."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

The dispute on appeal is whether the Council has met its burden of showing associational standing, see Lujan, 504 U.S. at 561 (burden of establishing elements of standing is on party invoking federal jurisdiction), to challenge the Puerto Rico Insurance Code provisions on behalf of its entity members.  Even more narrowly, the dispute is whether the first prong of the Hunt test is satisfied,[4] that is, whether "at least some members of the [Council] would have had standing to bring this suit in their own right."  UAW v. Brock, 477 U.S. 274, 286 (1986); see also United States v. AVX Corp., 962 F.2d 108, 116 (1st Cir. 1992) (noting that if "at least one" member "possesses standing to sue in [its] own right," first prong is satisfied).

As to the standing of the association's entity members to raise the rights of their individual associates, there is yet another three-part test.  In addition to showing that the third-party claim satisfies the three basic Article III requirements, the litigant asserting third-party standing must show the following: first, "that the litigant personally has suffered an injury in fact

_____

[4] The Commissioner does not argue on appeal that the germaneness requirement is not satisfied or that individual members' participation is necessary.  In any event, it is clear that Hunt's second and third prongs are satisfied.

that gives rise to a sufficiently concrete interest in the adjudication of the third party's rights"; second, "that the litigant has a close relationship to the third party"; and third, "that some hindrance exists that prevents the third party from protecting its own interests." Eulitt v. Me., Dep't of Educ., 386 F.3d 344, 351 (1st Cir. 2004).

The Council says its licensed members have standing to challenge the laws on behalf of their individual associates, and so the Council has standing. The Commissioner argues that the Council failed to carry its burden of proof to establish standing. See Lujan, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."). The Commissioner has two main theories.

She argues first her theory that the Council has no standing unless its entity members have suffered injury[5] in their

---

[5] The Commissioner's only challenge to the standing of the individual associates is that they are free to act on their own behalf and that they cannot be harmed by the challenged laws when they are unable to act on their employers' behalf, since the employers are not licensed to participate in the Puerto Rico market anyway. This final proposition fails, as explained in the text. The Commissioner does not otherwise challenge injury in fact, causation, and redressability, as to the individual associates. Nor does she dispute that the Council's members have sufficiently close relationships with their employees, and that the members are far better situated than the employees to protect the employees' interests.

own right, and that the entities cannot gain standing through their employees.  She argues that a peculiarity of Puerto Rico law permits her to make the argument.  As a matter of federal law, the theory itself is questionable.  The Council's entity members ordinarily would have third-party standing to represent the interests of their individual associates, and the Council has associational standing on behalf of its members.  See N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 9-10 (1988) (undertaking a similar analysis).

The Commissioner's argument is based on the Puerto Rico law requirement that entities and not just individuals must be licensed to engage in the insurance industry in Puerto Rico.  See P.R. Laws Ann. tit. 26, § 926.  Misreading the record, she contends that it is an uncontested fact that none of the Council's members has a license to operate in the Puerto Rico market.  That means, she argues, that none of the Council's members can compete in that market, nor can their individual associates compete there on the members' behalf, even if the individual associates are licensed. Because of the total inability to compete created by the members' lack of licenses, she says, the members cannot be harmed by the challenged provisions, which at best make it more difficult or expensive for licensed nonresident insurance agencies and brokerages to compete in Puerto Rico.  The fact that none of the Council's members has suffered an injury in fact, she says,

vitiates any possibility that the members could have third-party standing to raise the rights of the members' individual associates and destroys the Council's claim of associational standing.

The Commissioner's factual assertion is squarely refuted by the record, and she has offered no contrary evidence to create a dispute of material fact on this or any other point. The supplemental Crerar declaration clearly states that "[s]ome Council <u>members</u> that are based outside of Puerto Rico <u>are licensed</u> as nonresident agents and brokers by the Insurance Commissioner of Puerto Rico . . . and sell insurance services and products, currently through unaffiliated countersigning resident agents, in Puerto Rico." (Emphases added.) The Commissioner argues this Crerar declaration must be disregarded because it was filed too late and without the court's permission. But the district court was clearly entitled to and did consider the declaration, which only clarified evidence that was proffered earlier.[6]

---

[6] During discovery, in responding to the Commissioner's interrogatories, the Council had stated that "[a]ll nonresident agents and brokers, some of whom are Council members and their [individual associates], are subject to the burdens and injuries caused by complying with the challenged countersignature laws." The Council later submitted the first Crerar declaration, which stated that "[t]he Council's members include insurance agencies and brokerage firms that are based outside of Puerto Rico" and that "[t]he Council also represents its members' [individual associates] who are licensed [in Puerto Rico] and act as licensed nonresident insurance agents and brokers selling insurance services and products, currently through countersigning resident agents, in Puerto Rico, but who reside outside of that Commonwealth." The supplemental Crerar declaration clarified that "[t]he Council's membership includes insurance agencies and brokerages -- all

The Commissioner next objects that the declaration failed to "particularize or specify" who the licensed nonresident members were.[7]  But the Council was not obliged to provide specific names absent some contest by the Commissioner of the accuracy of the representation by the Council.[8]  What was important was that the Council's President declared, under penalty of perjury, that such members existed.  This declaration was facially sufficient. Had it been called into question by competent evidence from the Commissioner, there would have been a genuine factual dispute, but it was not; the only facts on the record were those put there by the Council.  The Commissioner's failure to controvert the Council's version of the facts with her own evidence is fatal to her appeal.[9]  See Fed. R. Civ. P. 56(e) (providing that party

---

corporations, limited liability companies, and partnerships; its membership does not include any individuals."

[7] The Commissioner also argues that the Council failed to specify which of the members' individual associates were licensed. This argument fails for the reasons stated in the text.

[8] Indeed, the Council had offered to make its confidential membership list available, if certain reasonable conditions were met, so that the Commissioner could check that list against her own records to determine which members and individual associates were licensed in Puerto Rico.

[9] We emphasize that the Commissioner could have sought additional time to conduct more pointed discovery on this issue before she responded to the Council's cross-motion for summary judgment. See Fed. R. Civ. P. 56(f) (providing that if it appears from the affidavits of the party opposing summary judgment that the party "cannot for reasons stated present by affidavit facts essential to justify the party's opposition," then the court may, among other things, "order a continuance to permit affidavits to be

opposing adequately supported summary judgment motion may not rest upon "mere allegations or denials," but must, by affidavit or otherwise, "set forth specific facts showing that there is a genuine issue for trial").

The Commissioner's second theory is that, licensure aside, the Council's allegations regarding its members' injury in fact were not sufficiently concrete and specific. Again, the argument misrepresents the record. The Council, in answering an interrogatory, identified numerous specific injuries suffered by its members and their individual associates, including: losing business because of the total prohibition on certain activities, having to engage in burdensome administrative efforts to arrange for resident countersigning agents for permitted transactions (and losing clients unhappy with these transaction costs), and, in some cases, foregoing participation in the Puerto Rico market altogether. The first Crerar declaration described these and other burdens, such as interference with individual associates' relationships with their clients, and stated that annual costs of compliance were in the hundreds of thousands of dollars in lost business. This evidence, unrebutted by any factual proffer from

---

obtained or depositions to be taken or discovery to be had"). She did not do so.

the Commissioner, was enough to support summary judgment for the Council.[10]

In the end, this appeal involves the Commissioner's attempt to preserve in place an unconstitutional statutory scheme on the flimsy basis that the wrong plaintiff sued, when in fact the plaintiff has asserted all of the elements needed for standing and the Commissioner has never contested the accuracy of those assertions.

**III.**

The Commissioner also appeals the district court's denial of her motion for reconsideration and clarification, which was brought under Federal Rule of Civil Procedure 59(e). See Fed. R. Civ. P. 59(e) (providing for motions to alter or amend the judgment). We normally review the district court's denial of such motions for "manifest abuse of discretion." Binkley Co. v. E. Tank, Inc., 831 F.2d 333, 337 (1st Cir. 1987).

The Commissioner sought from the district court clarification of whether the judgment declared unconstitutional those provisions of §§ 329 and 927, especially § 927(1) and (2), that are not technically "countersignature" provisions, and whether it applies to brokers (as distinct from agents).

---

[10] The Commissioner also argues that the Crerar declarations were insufficient because they were not based on personal knowledge. The declarations and the Council's answers to the Commissioner's interrogatories, also supplied by Crerar, were adequate; as stated, Crerar was the President of the Council.

The motion for clarification as presented to the district court appeared to seek to undo the declaration of unconstitutionality. It is no surprise the Council opposed it and the court rejected it without opinion. To the extent the "clarification" sought was merely technical, as the Commissioner now suggests on appeal, we note that the Commissioner made no attempt to work with the Council to agree on substitute language until prompted by us at oral argument.

After we raised this issue at oral argument, the parties agreed to work together, and they have jointly submitted a proposed modified judgment. They have agreed that the judgment extends to all provisions of §§ 329 and 927, including § 927(1) and (2), that deny Puerto Rico-licensed nonresident agents and brokers the same rights and privileges that they afford Puerto Rico-licensed resident agents and brokers. They also have agreed that the judgment should be modified to make this meaning clearer by deleting the one instance of the word "countersignature" and by adding the words "and brokers" after each of the four references to "agents."

The parties' proposal reflects our understanding of the district court's intended meaning. In light of the parties' agreement, we remand with instructions for the district court to enter a modified judgment with the clarifications described above.

**IV.**

The judgment is <u>remanded</u> for modification and, as modified, is <u>affirmed</u>.  Costs are awarded to the Council.