**THE COUNCIL OF INSURANCE AGENTS + BROKERS, Plaintiff**

**v.**

**VARGRAVE RICHARDS, in his official capacity as the Virgin Islands Commissioner of Insurance, Defendant**

Civil No. 2004-16

District Court for the Virgin Islands

Division of St. Thomas & St. John

July 18, 2006

JAMES M. DERR, ESQ., St. Thomas, U.S.V.I., SCOTT A SINDER, ESQ., Washington, D.C., DANIEL S. BLYNN, ESQ., Washington, D.C., *Attorney for the Plaintiff.*

CAROL THOMAS-JACOBS, ESQ., St. Thomas, U.S.V.I., *Attorney for the Defendant.*

GOMEZ, *Judge*

## MEMORANDUM OPINION

(July 18, 2006)

The Council of Insurance Agents + Brokers (the "Council"), brings this action against Vargrave Richards (the "Insurance Commissioner"), the Insurance Commissioner of the Virgin Islands, alleging violations under the Privileges and Immunities Clause and Equal Protection Clause, of the United States Constitution.

### I. Factual and Procedural Background

The Council is a trade association that represents over 300 of the nation's largest commercial property/casualty insurance agencies and brokerage firms. The Council's members also include insurance agents and brokers who are licensed in the Virgin Islands, but who reside outside of the Virgin Islands.

Richards is the Insurance Commissioner of the Virgin Islands. The Insurance Commissioner is charged with administering the insurance laws of the Virgin Islands. V.I. CODE ANN. tit. 22, § 53.

Under Virgin Islands law, every agent[1] or broker[2] who sells or solicits the purchase of insurance in the Territory—regardless of his or her residence—must be licensed by the Virgin Islands Division of Banking and Insurance. *See* 22 V.I.C. §§ 752, 772. Unlike resident agents and brokers, however, nonresident agents and brokers also must comply with an additional set of requirements, the constitutionality of which are in dispute in this case.

The challenged provisions specifically impose two conditions on nonresident agents or brokers who solicit, negotiate, or effect an insurance contract involving any Virgin Islands risk.

First, a nonresident agent shall not:

> [I]ssue an insurance contract covering a subject of insurance resident, located, or to be performed in this territory unless the insurance contract ... is countersigned by its licensed agent ... resident in this territory ...

22 V.I.C. § 220(a) ("Section 220").

Second, the countersigning agent:

> [S]hall receive not less than ten percent (10%) of the premium on bonds and all such lines of insurance as a countersignature fee, but in no event may such countersigning resident agent or manager receive more than fifty percent (50%) of the commission payable to the nonresident licensee.

---

[1] Title 22, section 751(b) of the Virgin Islands Code defines an "agent" as:

[A]ny person appointed by an insurer to solicit applications for insurance on its behalf, and if authorized so to do, to effectuate and countersign insurance contracts except as to life or disability insurances, and to collect premiums on insurances so applied for or effectuated.

22 V.I.C. § 751(b).

[2] Title 22, section 751(c) of the Virgin Islands Code defines a "broker" as:

[A]ny person who, on behalf of the insured, for compensation as an independent contractor, for commission, or fee, and not being an agent of the insurer, solicits, negotiates, or procures insurance or reinsurance or the renewal or continuance thereof, or in any manner aids therein, for insureds or prospective insureds other than himself.

22 V.I.C. § 751(c).

22 V.I.C. § 772(d) ("Section 772").[3]

The Council brings this action on behalf of its members. It does not seek monetary relief nor does it allege injury to itself. Rather, the Council alleges that title 22, sections 220 and 772 of the Virgin Islands Code unlawfully discriminate on the basis of residency. The Council therefore seeks a declaration from the Court that those sections are unconstitutional. The Council also seeks an injunction to prevent the Insurance Commissioner from enforcing these countersignature provisions.

The Council has moved for summary judgment on its claim. The Insurance Commissioner opposes the Council's motion, and has filed a cross-motion for summary judgment arguing that the Council lacks standing to bring the instant suit.

## II. Summary Judgment Standard

Summary judgment shall be granted only if "the pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if its existence or nonexistence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the initial burden of informing the Court of the basis for a motion for summary judgment and pointing out those parts of the record which he or she believes demonstrates an absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries its burden, the nonmoving party "may not rest upon the

---

[3]    Virgin Islands law further provides that:

Within thirty (30) days of the placing of an insurance policy under this section, the nonresident licensee shall execute and file with the Commissioner a report, inclusive of the following:

    (1)    the name and address of the insured;

    (2)    the identity of the authorized insurer or insurers;

    (3)    the name of the authorized insurer's licensed agent, manager or general agent, resident in the Territory;

    (4)    a description of the subject and location of the risk;

    (5)    the amount of premium charged for the insurance; and

    (6)    such other pertinent information as the Commissioner may reasonably require.

22 V.I.C. § 772(e).

mere allegations or denials of his or her pleadings, but his or her response must set forth specific facts showing that there is a genuine issue for trial." *Conners v. Fawn Mining Corp.*, 30 F.3d 483, 489 (3d Cir. 1994) (citations omitted). All reasonable inferences are drawn in favor of the nonmovant. *Anderson*, 477 U.S. at 255.

## III. Analysis

### A.  Standing

■■ The Insurance Commissioner contends that the Council lacks standing to bring this suit and that the action should be dismissed. To have standing to bring a lawsuit under Article III of the United States Constitution, a plaintiff must allege an injury that is fairly traceable to the defendant's conduct and which can be redressed through judicial action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). In order for an association to have standing to bring a suit on behalf of its members, it must be able to demonstrate that:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The Court will consider each prong of the test in turn.

To determine whether the Council's members have standing to sue, the Court must assess whether "its members, *or any one of them,* are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable claim had the members themselves brought suit. ..." *Id.* at 342 (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)) (emphasis added). Here, the Council's membership includes individual agents and brokers who are licensed in the Virgin Islands, but who reside outside of the Territory. Declaration of Ken Crerar ("Crerar Decl.") ¶ 5. The Council has also submitted uncontested evidence that the Virgin Islands countersignature provisions cost the Council's members hundreds of thousands of dollars per year. *Id.* at ¶ 7. Individual agents and brokers have thus suffered injury through the Insurance Commissioner's enforcement of the countersignature

provisions. Accordingly, each such Council member would have standing to bring suit against the Insurance Commissioner. *See, e.g., Hunt*, 432 U.S. at 343 (noting that the North Carolina statute at issue had caused direct injury to individual Washington apple producers "sufficient to establish the requisite 'case and controversy' between Washington apple producers and appellants").

The Council also seeks to protect the economic interests of its members by representing them in the political process, the courts, and other venues. Indeed, eliminating allegedly burdensome regulations "has been at the top of the Council's agenda for decades." Crerar Decl. ¶ 8. The interests the Council seeks to protect in this action are thus germane to the organization's purpose.

Finally, the Council seeks declaratory and injunctive relief. It does not seek monetary relief. Such a prospective claim for relief does not require individual member participation. *See, e.g., Warth*, 422 U.S. at 515 (noting that individual participation is not required when the "association seeks a declaration, injunction, or some other form of prospective relief").

■ The Council has thus satisfied the associational standing requirements and may assert claims on behalf of licensed nonresident agents and brokers.

## B. Privileges and Immunities Clause

■ Article IV, Section 2 of the United States Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."[4] The United States Supreme Court has stated that:

> When a challenged restriction deprives nonresidents of the privilege or immunity protected by this Clause, it is invalid unless (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective. In deciding whether the discrimination bears a substantial relation to the State's objectives, we consider, among other things, whether less restrictive means of regulation are available.

---

[4] The Privileges and Immunities Clause is applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act. *See* 48 U.S.C. § 1561.

*Barnard v. Thorstenn*, 489 U.S. 546, 552-553 (1989) (citations omitted). Individuals working within the insurance industry are protected by Article IV, Section 2. *See, e.g., Silver v. Garcia*, 760 F.2d 33, 36 (1st Cir. 1985) ("The ability of a citizen of one state to act as an insurance consultant in another state must be considered a fundamental right or privilege protected by the privileges and immunities clause."); *Council of Ins. Brokers + Agents v. Viken*, 408 F. Supp. 2d 836 (D.S.D. 2005) (granting summary judgment in favor of the Council's challenge to South Dakota's countersignature laws).

Notwithstanding the constitutional protections afforded individuals who work in the insurance industry, the Virgin Islands countersignature provisions treat nonresident insurance agents differently than resident agents. The Insurance Commissioner makes two arguments for the discriminatory treatment. First, he argues that resident insurance agents have a greater knowledge of local law. Second, he argues that resident insurance agents are more accessible during an emergency. The Court must consider whether those arguments constitute a substantial reason for the difference in treatment. The Court must also examine whether the discrimination mandated by the countersignature provisions substantially relate to the Insurance Commissioner's objectives. *See Barnard*, 489 U.S. at 553-554.

Courts that have been presented with the arguments made by the Insurance Commissioner have not responded kindly, nor have they been persuaded by them. *See, e.g., Council of Ins. Agents + Brokers v. Gallagher*, 287 F. Supp. 2d 1302, 1312 (N.D. Fla. 2003) ("[T]he notion that an agent cannot provide assistance outside his home state is nonsense. ..."); *Viken*, 408 F. Supp. 2d at 843 ("The countersignature laws and the discrimination practiced do not bear a substantial relationship to any legitimate objectives of South Dakota."). Indeed, with regard to accessibility, this Court is in accord with other courts that recognize that:

> whatever may have been said when people traveled by horseback and communicated by regular mail, today people communicate by telephone and facsimile and e-mail and overnight courier, and they travel by jet; state boundaries pose no obstacle.

*Gallagher*, 287 F. Supp. 2d at 1312; *see also Viken*, 408 F. Supp. 2d at 844 ("Possible personal contact with a resident insurance agent does not

provide a substantial reason for the difference in treatment. The notion that a nonresident agent is less capable of providing assistance on a policy outside of that agent's state of residence does not constitute a sufficient reason for the difference in treatment and the discrimination practiced."); *cf. Barnard*, 489 U.S. at 555 (finding that geographical isolation provided no justification for prohibiting nonresidents from taking the Virgin Islands bar examination).

The Insurance Commissioner's argument regarding competence is similarly without merit. The Supreme Court has made it clear there is no nexus between residency and competence. *See Barnard*, 489 U.S. at 555-556 ("[W]e will not assume that a nonresident lawyer—any more than a resident—would disserve his clients by failing to familiarize himself with the local law.") (citation omitted); *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 285 (1985) ("There is no evidence to support appellant's claim that nonresidents might be less likely to keep abreast of local rules and procedures.").[5]

None of the reasons suggested by the Insurance Commissioner to justify Section 772 and Section 220's discrimination against nonresident agents constitute a substantial reason for differing treatment between resident and nonresident agents and brokers. Additionally, the purported justifications do not substantially relate to the Insurance Commissioner's stated objectives. *Cf. Gallagher*, 287 F. Supp. 2d at 1313 ("No purpose is served by denying to Florida-licensed agents who live outside Florida the same rights and privileges afforded to Florida-licensed agents who reside within the state."). While the goals of accessibility and competent service

---

[5]  The Insurance Commissioner takes no issue with the Supreme Court's holdings in *Piper* and *Barnard*, nor their applicability to the instant insurance case. In fact, the Insurance Commissioner explicitly analogizes the licensing of insurance agents to the licensing of attorneys. *See* Def.'s Resp. 23 ("This [countersignature] system is analogous to the system for the practice of law."). This exact argument was proffered and rejected by the *Gallagher* Court which stated, in pertinent part:

> The analogy [between insurance agents and attorneys] is fatal because the state cannot require an insurance agent who makes the appropriate showing of relevant expertise to be a resident of the state as prerequisite to licensure, just as a state cannot require residency for admission to the state bar. *Piper* squarely so held with respect to attorneys, and the same principle obviously applies to insurance agents.

*Gallagher*, 287 F. Supp. 2d at 1311. The Insurance Commissioner has set forth no further argument that would justify this Court deviating from the analysis set forth in *Gallagher*.

from insurance brokers and agents are laudable, there are less restrictive means available to advance those goals. Accordingly, the counter-signature laws codified in title 22, sections 220 and 772 of the Virgin Islands Code violate the Privileges and Immunities Clause of the United States Constitution.[6]

## IV. CONCLUSION

In *Council of Insurance Agents + Brokers v. Juarbe-Jimenez*, 443 F.3d 103 (1st Cir. 2006), the United States Court of Appeals for the First Circuit summarily rejected the Puerto Rico Insurance Commissioner's arguments in favor of upholding Puerto Rico's countersignature laws stating that:

> In the end, this appeal involves the Commissioner's attempt to preserve in place an unconstitutional statutory scheme on the flimsy basis that the wrong plaintiff sued, when in fact the plaintiff has asserted all of the elements needed for standing and the Commissioner has never contested the accuracy of those assertions.

443 F.3d at 111. The situation presented here is no different. While the Virgin Islands statute may have been well intentioned, it derives its validity from its operation within the bounds of the United States Constitution. In this instance, the countersignature requirements codified in title 22, sections 220 and 772 of the Virgin Islands Code have exceeded those well established constitutional boundaries. Those sections impermissibly deny licensed nonresident insurance agents and brokers the rights and privileges that are afforded licensed agents and brokers that reside in the Virgin Islands.

Accordingly, the Council's motion for summary judgment will be granted and the Insurance Commissioner's cross-motion for summary judgment will be denied.

An appropriate order accompanies this memorandum.

---

[6]  Having determined that the Virgin Islands countersignature provisions violate the Privileges and Immunities Clause of the U.S. Constitution, this Court need not determine whether it violates the Fourteenth Amendment's Equal Protection Clause. *Council of Ins. Agents + Brokers v. Juarbe-Jimenez*, 363 F. Supp. 2d 47, 56 (D.P.R. 2005) *aff'd*, 443 F.3d 103 (1st Cir. 2006) (declining to consider an Equal Protection challenge to a similar Puerto Rico countersignature law found unconstitutional under the Privileges and Immunities Clause of the United States Constitution).