# United States Court of Appeals
## For the First Circuit

No. 20-1802

EQUAL MEANS EQUAL; THE YELLOW ROSES; KATHERINE WEITBRECHT,

Plaintiffs, Appellants,

v.

DAVID FERRIERO, in his official capacity as
Archivist of the United States,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise Jefferson Casper, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Barron, Circuit Judges.

Wendy J. Murphy and Alison Shea, with whom Women's and Children's Advocacy Project was on brief, for appellants.
Arlaine Rockey on brief for Real Estate Advisors Group et al., amici curiae.
Thomas Pulham, Attorney, Appellate Staff, Civil Division, with whom Brian M. Boynton, Acting Assistant Attorney General, Andrew E. Lelling, United States Attorney, and Michael S. Raab, Attorney, Appellate Staff, Civil Division, were on brief, for appellee.
Jennifer C. Braceras and Independent Women's Law Center on brief for Independent Women's Law Center, amicus curiae.

June 29, 2021

**BARRON, Circuit Judge.** This appeal arises in connection with a lawsuit that alleges that the Equal Rights Amendment is now part of the United States Constitution.[1] Because we conclude, as the District Court did, that none of the plaintiffs has pleaded sufficient facts to establish standing under Article III of the United States Constitution to bring this suit in federal court, it must be dismissed.[2]

## I.

The plaintiffs include two organizations, Equal Means Equal and The Yellow Roses, as well as an individual, Katherine Weitbrecht ("Weitbrecht"). Equal Means Equal is a national nonprofit organization that is dedicated to advocating for women's equality and for the ratification of the Equal Rights Amendment ("ERA"). The Yellow Roses is a student organization based in Massachusetts whose "sole mission is to advocate for and raise

---

[1] The text of that provision reads:

Section 1. Equality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex.

Sec. 2. The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

Sec. 3. This amendment shall take effect two years after the date of ratification.

H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972).

[2] We acknowledge with appreciation the assistance of the amici curiae in this case.

public awareness about [the] ratification of the ERA." Weitbrecht is a female resident of Massachusetts.

The plaintiffs commenced this action on January 7, 2020, when they filed a complaint that named as the defendant David S. Ferriero, in his official capacity as Archivist of the United States. They filed their amended complaint against the same defendant on February 29, 2020.

The operative complaint alleges that the Archivist violated 1 U.S.C. § 106b because he refused to publish the ERA and to certify its adoption after Virginia ratified it on January 27, 2020. Section 106b provides that

> [w]henever official notice is received at the National Archives and Records Administration that any amendment proposed to the Constitution of the United States has been adopted, according to the provisions of the Constitution, the Archivist of the United States shall forthwith cause the amendment to be published, with his certificate, specifying the States by which the same may have been adopted, and that the same has become valid, to all intents and purposes, as a part of the Constitution of the United States.

Id.

The complaint alleges that the Archivist's refusal to publish the ERA violated § 106b because Virginia on January 27, 2020, became, on the plaintiffs' count, the thirty-eighth state to have ratified the ERA. It further alleges that, as a result, the amendment has been ratified by "three-fourths of the several

- 4 -

states," as required by Article V of the United States Constitution, and the ERA is now "the duly ratified 28th Amendment to the U.S. Constitution."

In support of these contentions, the complaint alleges that both the seven-year ratification deadline that Congress sought to impose on the states when it first proposed the ERA in 1972, see H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972), and Congress's subsequent extension of that deadline to 1982, see H.R.J. Res. 638, 95th Cong., 92 Stat. 3799 (1978), violate Article V and the Tenth Amendment to the United States Constitution because those deadlines are not part of the text of the ERA itself and therefore "impose[] unlawful constraints on the States to elect a schedule of their choosing on which to consider and ratify . . . a proposed constitutional amendment." Thus, according to the complaint, the post-deadline ratifications of the ERA by Nevada in 2017, Illinois in 2018, and Virginia in 2020 brought the count of ratifying states to thirty-eight. In so alleging, the complaint asserts that the attempts by Nebraska, Idaho, Tennessee, Kentucky, and South Dakota to rescind their pre-deadline ratifications of the ERA are "null and void." The complaint further alleges that the Archivist's task of publishing the ERA is "purely ministerial" and that his refusal to perform that task has resulted in states' failure to prepare for the time when the ERA will become enforceable, which is two years after its ratification, by

"examin[ing] and repair[ing] laws, regulations, and policies, to remove all sex discriminatory features."

The plaintiffs request, among other things, an order declaring that the ERA is the Twenty-Eighth Amendment to the United States Constitution and an order mandating that the Archivist record the ratifications by all thirty-eight states, including Virginia. The plaintiffs also seek an order enjoining the Archivist from removing any previously recorded ratifications.

The Archivist moved to dismiss the plaintiffs' claims for lack of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), and for failure to state a claim for which relief may be granted, see Fed. R. Civ. P. 12(b)(6). The District Court granted the Rule 12(b)(1) motion on the ground that the plaintiffs had "not demonstrated standing in this suit" under Article III, and so it did not reach the Archivist's arguments that, on the merits, the complaint must be dismissed for failure to state a claim. Equal Means Equal v. Ferriero, 478 F. Supp. 3d 105, 125 (D. Mass. 2020). The plaintiffs timely appealed.

## II.

Article III limits the judicial power to actual cases and controversies. See U.S. Const. art. III, § 2, cl. 1. An actual case or controversy only exists if the plaintiff has demonstrated "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens

- 6 -

the presentation of issues upon which the court so largely depends." Baker v. Carr, 369 U.S. 186, 204 (1962).

"To satisfy the personal stake requirement, [the] plaintiff must establish each part of a familiar triad: injury, causation, and redressability." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). The injury element of constitutional standing requires that the plaintiff show that the injury is "'concrete and particularized' and 'actual or imminent.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Lujan, 504 U.S. at 560). The causation and redressability elements require that the plaintiff show that the injury is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." California v. Texas, ___ S. Ct. ___, 2021 WL 2459255 at *4 (2021) [No. 19-840] (quoting Daimler-Chrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)). The burden on the plaintiff at the pleading stage is plausibly to allege that each of the requirements to establish standing has been met. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Our review is de novo. See Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006).

The plaintiffs first contend that the District Court erred in dismissing their suit on Article III grounds insofar as

the individual members of Equal Means Equal and The Yellow Roses are "all female." They contend in that regard that such members "have a protectable legal interest" in "the ERA's vitality" on which the Archivist inflicted "catastrophic harm" by not publishing the ERA, because the Archivist's failure to do so "has made it more difficult for them to obtain the benefits of the ERA's presumptive validity." They further allege that in consequence of the Archivist's failure to publish the ERA, Massachusetts continues not to protect women against "sex-based violence" under its hate crime laws and that they are accordingly at risk of violent attack from which they otherwise would be protected.

We may assume that the complaint may be read to assert standing on this member-grounded basis, because we agree with the District Court, see Equal Means Equal, 478 F. Supp. 3d at 115, that, even on that reading, the complaint's allegations regarding women's alleged risk of harm and the defendant's allegedly unlawful conduct do not suffice to satisfy their pleading obligation at this stage of the litigation with respect to standing. For, as concrete as the harm from an assault surely is, the plaintiffs are seeking relief from the conduct of a defendant who stands well removed from the person who would directly inflict that harm. See TransUnion LLC v. Ramirez, ___ S. Ct. ___, 2021 WL 2599472 at *12 (2021) [No. 20-297]; Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013); see also Pub. Citizen, Inc. v. Nat'l Highway

Traffic Safety Admin., 489 F.3d 1279, 1291, 1296 (D.C. Cir. 2007) (Kavanaugh, J.) (noting that plaintiffs "must demonstrate [either a] 'substantial probability' that [the challenged] action caused [them] harm" or both (1) that the challenged "action causes [them] to face an increase in the risk of harm that is 'substantial,' and [(2) that] the ultimate risk of harm also is 'substantial'" (first quoting Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663, 666 (D.C. Cir. 1996) (en banc); and then citing Mountain States Legal Found. v. Glickman, 92 F.3d 1228, 1235 (D.C. Cir. 1996))).

Nor are we persuaded by the plaintiffs' contention that the decisions by the Supreme Court of the United States in Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, 508 U.S. 656 (1993), and Grutter v. Bollinger, 539 U.S. 306 (2003), or by our Court in Carson ex rel. O.C. v. Makin, 979 F.3d 21 (1st Cir. 2020), show otherwise. In the first two cases, the Supreme Court held, respectively, that an organization whose members alleged that they would seek city contracts had standing to challenge the city's race-based criteria for awarding them, see Ne. Fla. Chapter, 508 U.S. at 666, and that a student who had applied for and been denied admission to the University of Michigan Law School had standing to challenge the school's admissions criteria, see Grutter, 539 U.S. at 316-17. As for the case from our Circuit, we held that parents who alleged that they would use state-authorized tuition

- 9 -

assistance to send their children to pervasively sectarian schools had standing to challenge a state law barring them from using that assistance to do so.  See Carson, 979 F.3d at 32.

Equal Means Equal and The Yellow Roses do not purport to premise their standing here on any benefit that has been denied to them by the challenged actions of the defendant in the way in which the plaintiffs in those three cases did.  They instead premise their standing on the risk of harm that they contend they face because of the Archivist's failure to publish the ERA.  Thus, those precedents fail to support the conclusion that the plaintiffs plausibly assert the requisites for standing.

The plaintiffs do also argue that at least Weitbrecht has met her burden at this stage of the litigation to show that she has standing under Article III.  They point to the complaint's allegation that Weitbrecht was the victim of a prior act of private sex-based violence that was criminally prosecuted, but not as a hate crime.  And they point to statistics set forth in the complaint that assert, among other things, that college women and other women generally, though not Weitbrecht specifically, are at an increased risk of suffering sex-based violence and other harms, relative to other persons.  But, neither these aspects of the complaint nor any other purport to address how any causal link between the risk of such harm that Weitbrecht in particular faces and the Archivist's failure to publish the ERA differs from the

- 10 -

causal link between the risk of such harm that the organizations' members generally face as women and that failure. The complaint thus fails plausibly to allege standing as to Weitbrecht just as it fails to do as to those members more generally.

From our conclusions thus far it follows that we must also reject the contention that Equal Means Equal presses to us that it has what is known as associational standing.[3] After all, to have standing on that basis, Equal Means Equal must show that at least one of its members has standing in her own right. See Council of Ins. Agents & Brokers v. Juarbe-Jiménez, 443 F.3d 103, 108 (1st Cir. 2006) (noting that an organization has associational standing to sue on behalf of its members only if "its members would . . . have standing to sue in their own right" (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977))).

That brings us, then, to the contentions by Equal Means Equal and The Yellow Roses that each has standing on its own as an organization due to the injury that, the complaint alleges, each has suffered in that capacity from the actions of the Archivist. The organizations contend that this is so because, as the complaint alleges, each "suffered frustration of mission and diversion of resources to identify and counteract" the allegedly "unlawful

---

[3] No argument has been made to us that The Yellow Roses, too, has associational standing.

- 11 -

actions" by the Archivist. The organizations point in that regard to the allegations in the complaint that they incurred expenses by "filing this lawsuit" and also "by generating educational materials" to "contact[] government officials" and "to educate and inform [the organizations'] members, supporters and the general public about why the ERA is duly ratified despite the Archivist's actions to the contrary, and why government officials should be taking steps to comply with the ERA."

But, an organization cannot establish standing if the "only injury arises from the effect of [a challenged action] on the organizations' lobbying activities, or when the service impaired is pure issue-advocacy." People for the Ethical Treatment of Animals v. U.S. Dep't of Agric., 797 F.3d 1087, 1093-94 (D.C. Cir. 2015) (citations and internal quotation marks omitted). "Otherwise, the implication would be that any individual or organization wishing to be involved in a lawsuit could create a[n organization] for the purpose of conferring standing, or could adopt [a mission] so that the [organization] expressed an interest in the subject matter of the case, and then spend its way into having standing." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 288 (3d Cir. 2014); see also Ctr. for L. & Educ. v. Dep't of Educ., 396 F.3d 1152, 1162 n.4 (D.C. Cir. 2005) ("In Sierra Club [v. Morton, 405 U.S. 727, 739 (1972)], the Supreme Court recognized that to hold that a lobbyist/advocacy group had standing to

- 12 -

challenge government policy with no injury other than injury to its advocacy would eviscerate standing doctrine's actual injury requirement . . . .").

The organizations do contend that Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982), supports their bid for organizational standing, notwithstanding the caselaw just described. But, the fair housing organization there provided counseling and other referral services to those seeking affordable housing, and it was found to have Article III standing in bringing suit under § 804 of the Fair Housing Act, 42 U.S.C. § 3604, based on its allegations that the defendants' conduct in violation of that statute had "perceptibly impaired" the organization's ability to provide those services, such that it "has had to devote significant resources to identify and counteract" that conduct. Havens, 455 U.S. at 379. Havens thus did not purport to find standing based merely on the expenses that the plaintiff would have had to incur to engage in additional issue advocacy in favor of fair housing.

The plaintiff organizations here seek standing based only on quite different allegations from those found to have sufficed to support organizational standing in Havens. They premise their standing on the allegation that the defendant's unlawful conduct in not complying with 1 U.S.C. § 106b will lead others to be less likely to treat as having legal effect a law

that would benefit all women and whose passage the plaintiff organizations support, such that the organizations will have to expend additional resources to ensure that the law will be treated as having legal effect. Because Equal Means Equal and The Yellow Roses do not address this difference between their case and <u>Havens</u>, they fail to explain how <u>Havens</u> itself requires the conclusion that their allegations regarding their mission and their expenditures satisfy their burden as to organizational standing.

Equal Means Equal and The Yellow Roses do also rely on various other cases that are not binding on this Circuit to support their contention that they have plausibly alleged that they have organizational standing. But, those cases either do not concern organizational standing,[4] or involve allegations by plaintiff organizations that are much more like those in <u>Havens</u> than those

---

[4] <u>See</u> <u>Virginia</u> v. <u>Ferriero</u>, Civ. No. 20-242 (RC), 2021 WL 848706, at *5-8 (D.D.C. Mar. 5, 2021) (involving states, not organizations, suing the Archivist for his failure to publish the ERA and holding that the plaintiff states lacked standing to sue because they failed to establish injury in fact, traceability, or redressability); <u>Idaho Farm Bureau Fed'n</u> v. <u>Babbitt</u>, 58 F.3d 1392, 1398-99 (9th Cir. 1995) (finding associational rather than organizational standing); <u>Sagebrush Rebellion, Inc.</u> v. <u>Watt</u>, 713 F.2d 525, 527-29 (9th Cir. 1983) (finding that the organizations had a right to intervene, not that they had standing); <u>Wash. State Bldg. & Constr. Trades Council, AFL-CIO</u> v. <u>Spellman</u>, 684 F.2d 627, 629-32 (9th Cir. 1982) (not discussing standing); <u>Northland Fam. Plan. Clinic, Inc.</u> v. <u>Cox</u>, 487 F.3d 323, 343-47 (6th Cir. 2007) (not permitting an organization to intervene).

before us here.[5]  Nor do Equal Means Equal and The Yellow Roses contend otherwise.

## III.

The federal constitutional questions that the plaintiffs' complaint raises concerning the legal status of the ERA are significant.  To be fit for adjudication in federal court, however, they must be raised in a suit that satisfies the

---

[5]  See Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1040-41 (9th Cir. 2015) (finding that civil rights organizations had standing to challenge specific violations of voter registration requirements by state officials based on their allegations that they had diverted resources to help particular individuals affected by those violations); Fair Hous. of Marin v. Combs, 285 F.3d 899, 903-05 (9th Cir. 2002) (finding that a fair housing organization had standing to challenge a defendant landlord's specific practices of discriminating on the basis of race in steering prospective tenants, given the organization's allegations that it had diverted resources to help particular tenants affected by those practices); Smith v. Pac. Props. & Dev. Corp., 358 F.3d 1097, 1105-06 (9th Cir. 2004) (finding similarly with respect to allegations of disability-based discrimination); Hooker v. Weathers, 990 F.2d 913, 915 (6th Cir. 1993) (finding similarly with respect to allegations of age- and family-status-based discrimination); African Cmtys. Together v. Trump, Civ. No. 19-10432-TSH, 2019 WL 5537231, at *3-4, *4 n.5 (D. Mass. Oct. 25, 2019) (finding that the organizational plaintiff had alleged an injury in fact to challenge the President's decision to terminate Deferred Enforced Departure for Liberians based on allegations that the organization diverted resources to protect those particular African immigrants facing imminent removal); Nat'l Coal. Against Violent Athletes v. Dep't of Educ., No. 17-cv-12043-PBS, Mem. & Order, ECF No. 112 at 7-11 (D. Mass. Dec. 3, 2020) (holding that the organizational plaintiff had standing in part because the organization had pointed to clients who were seeking its legal help for cases before the U.S. Department of Education and had alleged that the guidance documents it was challenging would disfavor its clients in those cases, thus frustrating its advocacy mission and diverting its resources).

requirements of Article III.  Because we agree with the District Court that the plaintiffs have not met their burden at the pleading stage with respect to those federal constitutional requirements, we **affirm** the order dismissing their suit for lack of standing.