IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**ARIZONA SCHOOL BOARDS ASSOCIATION, INC. ET AL.,**
*Plaintiffs/Appellees,*

*v.*

**STATE OF ARIZONA, A BODY POLITIC,**
*Defendant/Appellant.*

———————————

No. CV-21-0234-T/AP
Filed January 6, 2022

———————————

Appeal from the Superior Court in Maricopa County
The Honorable Katherine Cooper, Judge
No. CV2021-012741
**AFFIRMED**

Appeal to the Court of Appeals, Division One
No. 1 CA-CV 21-0555
**TRANSFERRED**

———————————

COUNSEL:

Daniel J. Adelman, Arizona Center for Law in the Public Interest, Phoenix; and Roopali H. Desai (argued), D. Andrew Gaona, Kristen Yost, Coppersmith Brockelman PLC, Phoenix, Attorneys for Arizona School Boards Association, Inc., et al.

Mark Brnovich, Arizona Attorney General, Joseph A. Kanefield, Chief Deputy Attorney General, Brunn W. Roysden III (argued), Solicitor General, Michael S. Catlett, Chief Counsel, Phoenix; and Patrick Irvine, Lyndsey M. Maasch, Fennemore Craig, P.C., Phoenix, Attorneys for State of Arizona

John C. Richardson, DeConcini McDonald Yetwin & Lacy, P.C., Tucson, Attorneys for Amicus Curiae National School Boards Association

Paul F. Eckstein, Austin C. Yost, Samantha J. Burke, Perkins Coie LLP, Phoenix, Attorneys for Amici Curiae Arizona Hospital and Healthcare Association and Arizona Medical Association

Michael G. Rankin, Tucson City Attorney, Regina Nassen, Principal Assistant City Attorney, Tucson, Attorneys for Amicus Curiae City of Tucson

Samara M. Spence, Jeffrey B. Dubner, Democracy Forward Foundation, Washington, DC; and Bruce E. Samuels, Jennifer Lee-Cota, Papetti Samuels Weiss LLP, Scottsdale, Attorneys for Amici Curiae Arizona Chapter of American Academy of Pediatrics

Mary R. O'Grady, Lynne C. Adams, Joshua D. Bendor, Shannon H. Mataele, Osborn Maledon, P.A., Phoenix, Attorneys for Amicus Curiae Phoenix Union High School District

Kory Langhofer, Thomas Basile, Statecraft PLLC, Phoenix, Attorneys for Amici Curiae Speaker of the Arizona House of Representatives Russell Bowers, Arizona Senate President Karen Fann, and Governor Douglas A. Ducey

Rhonda L. Barnes, Jane Ahern, Arizona House of Representatives, Phoenix; and Lisette Flores, Arizona Senate, Phoenix, Attorneys for Amici Curiae Legislative Democrats

Brett W. Johnson, Ian R. Joyce, Snell & Wilmer L.L.P., Phoenix, Attorneys for Amici Curiae Senator Vince Leach, Senator David Gowan, and Representative Regina Cobb

————————

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, BEENE, MONTGOMERY, and JUDGE HOWE joined.[*] JUSTICE BOLICK issued a concurring opinion.

————————

[*]    Justice Kathryn H. King has recused herself from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Randall M. Howe, Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.

_____

JUSTICE LOPEZ, opinion of the Court:

¶1         We consider whether four legislative budget reconciliation bills ("BRBs")—House Bill ("HB") 2898, Senate Bill ("SB") 1824, SB 1825, and SB 1819—violate the Arizona Constitution's "title requirement" or "single subject rule." *See* Ariz. Const. art. 4, pt. 2, § 13. We conclude that, because these bills violate the title requirement, they are void in part, and because SB 1819 also violates the single subject rule, it is entirely void.

## BACKGROUND

¶2         One of the Arizona legislature's fundamental duties is adopting an annual budget. The budget process includes passing a general appropriations bill, commonly referred to as a "feed bill," which funds previously authorized government expenses, *Carr v. Frohmiller*, 47 Ariz. 430, 441 (1936), as well as other appropriations. Our constitution requires that appropriations beyond the scope of the general appropriations bill "shall be made by separate bills, each embracing but one subject." Ariz. Const. art. 4, pt. 2, § 20. Such bills are also subject to the general constitutional requirements that "[e]very act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." Ariz. Const. art. 4, pt. 2, § 13. Two distinct requirements emanate from this provision, which are commonly referred to as the "single subject rule" and the "title requirement."

¶3         The general appropriations bill may not contain substantive provisions. *See* Ariz. Const. art. 4, pt. 2, § 20 ("The general appropriation bill shall embrace nothing but appropriations for the different departments of the state, for state institutions, for public schools, and for interest on the public debt."). Thus, amendments and additions to substantive law necessary to effectuate the annual budget must be passed separately; this is commonly achieved using "reconciliation bills" that are related to and passed along with the general appropriations bill.

¶4         Before 2004, substantive budget amendments were placed into one of three omnibus reconciliation bills ("ORBs"). Each ORB related to one of the following subjects: public finance, education, and health and welfare. Following this Court's opinion in *Bennett v. Napolitano*, 206 Ariz.

520, 528 ¶ 39 & n.9 (2003), which recognized that ORBs often addressed multiple subjects and perhaps ran afoul of the single subject rule, the legislature modified its budget process. Since 2004, the legislature has placed substantive budget amendments into eight to ten BRBs, allowing for treatment of a broader range of subjects.

¶5 The 2022 budgetary process commenced with the feed bill—SB 1823—which funded previously authorized expenses of the state's various constitutionally enumerated fiscal obligations. The 2022 budget, approved by the legislature and signed by the Governor on June 30, 2021, included eight BRBs. Of these, the Arizona School Boards Association, along with other organizations and citizens (collectively, "Plaintiffs"), challenged four—HB 2898, SB 1824, SB 1825, and SB 1819—in a complaint filed on August 12, 2021, against the State of Arizona. The complaint alleged that all four BRBs violated the title requirement and that SB 1819 also violated the single subject rule.

¶6 HB 2898 is titled: "An Act Amending [Statutes Listed by Number]; Appropriating Monies; Relating to Kindergarten through Grade Twelve Budget Reconciliation." Plaintiffs alleged that three sections violated the title requirement. Section 12 prohibited public and charter schools from requiring students or staff to use face coverings or receive a COVID-19 vaccine to attend in-person classes. Section 21 prohibited public and charter schools from teaching a curriculum that "presents any form of blame or judgment on the basis of race, ethnicity or sex." Section 50 authorized the Attorney General to initiate civil actions against public officials, employees, or agents who use public resources to "organize, plan or execute any activity that impedes or prevents a public school from operating for any period of time."

¶7 SB 1824 is titled: "An Act Amending [Statutes Listed by Number]; Appropriating Monies; Relating to Health Budget Reconciliation." Plaintiffs argued two sections violated the title requirement. Section 12 prohibited schools from requiring immunizations for the human papillomavirus or any immunization with emergency use authorization. Section 13 prohibited the state, cities, towns, and counties from "establishing a COVID-19 vaccine passport," or requiring any person to be vaccinated for COVID-19 or businesses to obtain vaccination status from customers.

4

¶8          SB 1825 is titled: "An Act Amending [Statutes Listed by Number]; Appropriating Monies; Relating to Budget Reconciliation for Higher Education."   Plaintiffs claimed one section violated the title requirement. Section 2 prohibited the Arizona Board of Regents and public universities and community colleges from requiring the COVID-19 vaccine or proof of vaccination status or placing other conditions on attendance, including mandatory testing or face coverings.

¶9          SB 1819 is titled: "An Act Amending [Statutes Listed by Number]; Appropriating Monies; Relating to State Budget Procedures." Plaintiffs alleged that six sections — 4, 5, 33, 35, 39, and 47 — violated the title requirement, and that the entire bill violated the single subject rule.  The six sections challenged relate to various election procedures and prohibit new COVID-19 mitigation laws that affect private entities.  The rest of the bill covers a menagerie of subjects including dog racing permits, the definition of a "newspaper," and authorization of investigations into the practices of social media platforms related to political contributions.

¶10          Plaintiffs requested that the challenged sections of all four BRBs be declared unconstitutional as violative of the title requirement, that SB 1819 be declared unconstitutional as violative of the single subject rule, and that the State be enjoined from enforcing the challenged sections and SB 1819 in its entirety.  Plaintiffs further requested a declaratory judgment that section 12 of HB 2898 violated the Arizona Constitution on equal protection grounds.

¶11          The State, in addition to contesting the merits of Plaintiffs' arguments, asserted two justiciability defenses: (1) that Plaintiffs lack standing to challenge SB 1819; and (2) that the courts lack authority to determine the BRBs' validity because the issue raises a non-justiciable political question.

¶12          The trial court issued its judgment on September 27, 2021, ruling that the challenged sections of HB 2898, SB 1824, SB 1825, and SB 1819 violated the title requirement and the entirety of SB 1819 violated the single subject rule.  Thus, those sections and SB 1819 were void and unenforceable.  Given those declarations, the court denied injunctive relief as moot, stating that relief would be available if noncompliance occurred. It did not decide whether section 12 of HB 2898 violated the equal protection clause.  The State timely appealed.

¶**13**    We granted the State's petition to transfer the appeal from the court of appeals pursuant to Arizona Rule of Civil Appellate Procedure 19(a) because the budget issues raised required prompt resolution. *See Ariz. Early Childhood Dev. & Health Bd. v. Brewer*, 221 Ariz. 467, 469 ¶ 2 (2009). After briefing and oral argument, we issued an order affirming the trial court's judgment with an explanatory opinion to follow.   We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I.

¶**14**    We first consider the State's justiciability arguments that we should not reach the merits on Plaintiffs' claims concerning SB 1819 because they lack standing and Plaintiffs' challenges to the BRBs present non-justiciable political questions.

### A.

¶**15**    The State concedes that Plaintiffs have standing to challenge HB 2898, SB 1824, and SB 1825.  The State, however, contends that Plaintiffs lack standing to challenge SB 1819 because they do not allege an injury from the bill's alleged violations of the Arizona Constitution.  We disagree.

¶**16**    Plaintiffs' challenge to SB 1819 arises under Arizona's Uniform Declaratory Judgments Act, A.R.S. §§ 12-1831 to -1846 ("DJA"). Pursuant to the DJA:

> Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder.

§ 12-1832. Thus, under the DJA, a plaintiff must show that its "rights, status or other legal relations" are "affected by a statute," *see, e.g.*, *Am. Est. Life Ins. Co. v. Ariz. Dep't of Ins.*, 116 Ariz. 240, 243 (App. 1977), but it need not demonstrate past injury or prejudice so long as the relief sought is not advisory, *Ariz. State Bd. of Dirs. for Junior Colls. v. Phx. Union High Sch. Dist.*,

102 Ariz. 69, 73 (1967) ("No proceeding will lie under the declaratory judgment acts to obtain a judgment which is advisory only or which merely answers a moot or abstract question . . . ."). Although a declaratory judgment action is remedial and should be "liberally construed and administered," a plaintiff must have "an actual or real interest in the matter for determination." *Podol v. Jacobs*, 65 Ariz. 50, 54 (1946).

¶17 Here, the trial court held that Plaintiffs, as individuals and organizations, had standing to challenge SB 1819 because they alleged facts establishing that the bill "directly affected their rights and resources." Those facts included Plaintiffs' alleged loss of resources due to the legislature's failure to follow proper legislative process in enacting SB 1819 and that passage of the bill "without adequate notice deprived [Plaintiffs] of the ability to participate in the legislative process." The court also found that section 39 of the bill—which bans local governments from adopting COVID-19 mitigation measures that impact schools—interfered with the ability to protect students from infection.

¶18 Although we agree with the trial court that Plaintiffs have standing to challenge SB 1819, we disavow some of its reasoning. First, the trial court and Plaintiffs relied on *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013), and other cases for the proposition that an organization has standing to challenge the constitutionality of a statute if it demonstrates merely that the contested statute drained its resources and frustrated its mission. Our view, however, aligns with other federal courts that have held that "an organization cannot establish standing if the 'only injury arises from the effect of [a challenged action] on the organizations' lobbying activities, or when the service impaired is pure issue-advocacy.'" *Equal Means Equal v. Ferriero*, 3 F.4th 24, 30 (1st Cir. 2021) (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093–94 (D.C. Cir. 2015)). This approach prevents parties from eviscerating the standing requirement by merely asserting an interest. *Id.*; *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162 n.4 (D.C. Cir. 2005) ("In *Sierra Club* [*v. Morton*, 405 U.S. 727, 739 (1972)], the Supreme Court recognized that to hold that a lobbyist/advocacy group had standing to challenge government policy with no injury other than injury to its advocacy would eviscerate standing doctrine's actual injury requirement . . . ."); *cf. Sears v. Hull*, 192 Ariz. 65, 69–70 ¶¶ 16–17 (1998) (showing of generalized harm insufficient to confer standing).

¶19 Second, we disagree with the trial court's conclusion that Plaintiffs' alleged loss of the ability to participate in the legislative process confers standing. The legislature's rules for public participation and other procedural rules are within the exclusive purview of the legislature. There are no manageable standards for determining whether organizations, let alone individuals, were able to sufficiently engage in advocacy. *Forty-Seventh Legislature of State v. Napolitano*, 213 Ariz. 482, 485 ¶ 7 (2006) ("'Political questions,' broadly defined, involve decisions that the constitution commits to one of the political branches of government and raise issues not susceptible to judicial resolution according to discoverable and manageable standards.").

¶20 We hold, however, that Plaintiffs have standing under the DJA to challenge SB 1819. Section 39 of the bill prohibits a "county, city or town" from adopting "any order, rule, ordinance or regulation related to mitigating the COVID-19 pandemic that impacts private businesses, schools, churches or other private entities, including an order, rule, ordinance or regulation that mandates using face coverings, requires closing a business or imposes a curfew." Plaintiffs contend that section 39 compelled the Pima County Board of Supervisors to reject motions to implement a mask mandate in schools and mandate a COVID-19 vaccine for county employees. Three plaintiffs, including a trade association with members living and working in Pima County, were affected by the bill's alleged impediments to the county's "ability to exercise local control to protect its residents." These allegations are sufficient to confer standing upon Plaintiffs to contest the constitutionality of SB 1819. *Cf. Pena v. Fullinwider*, 124 Ariz. 42, 44 (1979) ("Appellants as consumers are 'affected' by the amendment because cost-per-unit pricing information is designed to allow them to compare the costs of different commodities. They have an actual or real interest in the matter for determination."); *State v. Direct Sellers Ass'n*, 108 Ariz. 165, 167 (1972) (finding that "a trade association, some of whose members conduct home sales solicitation" had standing to challenge the constitutionality of a home solicitation law).

**B.**

¶21 The State next argues that our courts lack authority to determine whether the challenged bills comport with Arizona constitutional standards; in the State's view, this is a non-justiciable political question because only the legislature may determine whether its

8

bills satisfy constitutional requirements. We reject this untenable proposition.

**¶22** This case implicates our courts' core constitutional authority and duty to ensure that the Arizona Constitution is given full force and effect. The responsibility of determining whether the legislature has followed constitutional mandates that expressly govern its activities is given to the courts—not the legislature. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803) ("So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.").

**¶23** An issue presents a non-justiciable political question if the Constitution commits the issue "to one of the political branches of government and raise[s] issues not susceptible to judicial resolution according to discoverable and manageable standards." *Napolitano*, 213 Ariz. at 485 ¶ 7. Here, the title requirement and single subject rule apply to all "acts," which necessarily include BRBs. Our review of the contested BRBs' constitutionality does not equate to this Court "superintending" the budget process, as the State claims. Whether the legislature has complied with constitutional requirements depends on whether the final BRBs' language reflects a "proper connection" to the budget as understood by an outside reader. *See, e.g.*, *State ex rel. Conway v. Versluis*, 58 Ariz. 368, 377 (1941); *In re Lewkowitz*, 70 Ariz. 325, 329 (1950). Thus, manageable standards exist to resolve the question, as courts have enforced the title requirement and single subject rule for decades. *See, e.g.*, *Brewer v. Burns*, 222 Ariz. 234 (2009). As the trial court sagely concluded, this matter falls within the purview of the courts because "[t]he issue here is not *what* the Legislature decided but *how* it decided what it did."

## II.

**¶24** We next consider, in turn, Plaintiffs' title requirement and single subject rule challenges to the BRBs.

**A.**

¶25      The Arizona Constitution, article 4, part 2, describes the legislature's structure and enumerates its powers. Section 13 of part 2, titled "Subject and title of bills," provides that "[e]very act shall embrace but one subject"—the single subject rule—"which subject shall be expressed in the title"—the title requirement. Ariz. Const. art. 4, pt. 2, § 13.

¶26      The title requirement provides that the single subject expressed in every legislative act "shall be expressed in the [act's] title." Ariz. Const. art. 4, pt. 2, § 13. To satisfy this requirement, the "title must be worded so that it puts people on notice as to the contents of the act," *State v. Sutton*, 115 Ariz. 417, 419 (1977), but the "title to an act need not be a complete index to its contents," *State v. Harold*, 74 Ariz. 210, 214–15 (1952). "[A] provision need only 'directly or indirectly relate[] to the subject of the title and hav[e] a natural connection therewith' or be 'germane to the subject expressed in the title' to be constitutional." *Manic v. Dawes*, 213 Ariz. 252, 256 ¶ 21 (2006) (quoting *Harold*, 74 Ariz. at 214–15). In other words, a reasonable person should be expected to know what an act deals with based on its title. *See Versluis*, 58 Ariz. at 377–78. A violation of the title requirement voids the portion of the act not expressed in the title, but the compliant part of the act survives. Ariz. Const. art. 4, pt. 2, § 13.

¶27      Here, all four challenged BRBs are similarly titled. *See supra* ¶¶ 6–9. Each bill's title starts with "an act amending," followed by a list of affected statutes, the words "appropriating monies," "related to," and a generic title description. The titles of the bills relating to K-12, health, and higher education also reference "budget reconciliation."

¶28      The State argues that the BRB titles satisfy the title requirement because they relate to the general topic or idea of the bills' subjects, i.e., K-12, health, higher education, and state budget procedures. Although the bills' challenged sections may superficially relate to those subjects, this does not satisfy the requisite inquiry. The titles also include the term "appropriating monies" and indicate that the bills pertain to "budget reconciliation" or "budget procedure." Contrary to the State's claim, a closer examination of the challenged sections manifests the disconnect between the titles and the substantive provisions.

**¶29** The legislature's decision to include the term "appropriating monies" and to delineate the "budget reconciliation" or "budget procedure" purpose in the bills' titles is critical. This Court, in *Rios v. Symington*, defined the term "appropriation":

> An appropriation is the setting aside from the public revenue of a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other. No specific language is necessary to make an appropriation, for the test is whether or not the people have expressed an intention that the money in question be paid. The essential parts of the definition, no matter how the wording may be changed, are the "certain sum," the "specified object," and the "authority to spend." Any act, or part of an act, containing all three of these elements is, and always must be, an "appropriation."

172 Ariz. 3, 6–7 (1992) (internal quotation marks and citations omitted).

**¶30** Employing the *Rios* appropriation standard in this case, we conclude the contested sections in the four bills do not involve setting aside public monies, nor do they identify the manner or procedure in which such monies will be expended. In fact, the bills have no expression of fiscal significance and fail to even identify a funding source. Instead, the challenged sections are more aptly described as various substantive legislative enactments concerning COVID-19-related directives; an expansion of Attorney General authority; election-related requirements; and the formation of a Senate election committee. More succinctly, the legislature titled these bills as "appropriation" and "budget reconciliation" or "budget procedure" provisions, yet the challenged sections are devoid of any form of appropriation or budgetary purpose. Instead, the contested sections contain substantive legislative measures for which the titles do not provide notice. Moreover, as Plaintiffs note, the non-appropriative nature of the bills is most graphically illustrated by the absence of any fiscal effect; tellingly, none of the appropriations for the "feed bill"—SB 1823—have failed because the challenged provisions have been stayed. This is so because the challenged sections are not necessary to implement SB 1823's authorizations. If the challenged provisions truly embodied a budgetary

11

purpose, staying their implementation would have affected SB 1823's appropriations.

¶**31**     A violation of the title requirement voids the portion of the act not expressed in the title, but the compliant part of the act survives. Ariz. Const. art. 4, pt. 2, § 13.   Therefore, we hold that the challenged sections in HB 2898, SB 1824, SB 1825, and SB 1819 violate the title requirement and are unconstitutional and void.

¶**32**     We pause to clarify the effect of today's holding on the "California Format" of legislative titling, which enumerates by title and section number every individual statute added or amended by the bill and is augmented with a generalized description of a bill's subject matter. The legislature has employed the California Format since 1990, and various legislative amici contend that it comports with the title requirement. We do *not* hold that the California Format infringes the title requirement. Instead, as discussed, the BRBs here violate the title requirement because the challenged sections lack a natural connection to the subject expressed in the title—a fatal flaw that does not implicate the California Format of bill titling.

**B.**

¶**33**     This Court has described the purpose of the single subject rule and its significance to our state's constitutional order:

> The single subject rule is meant to prevent "log-rolling," or combining different measures into one bill so that a legislator must approve a disfavored proposition to secure passage of a favored proposition.  The single subject rule should be read liberally so as not to impede or embarrass the legislature but not so "foolishly liberal" as to render the constitutional requirements nugatory.  All that is necessary is that the act should embrace some one general subject: and by this is meant, merely, that all matters treated of should fall under some one general idea.

*Hoffman v. Reagan*, 245 Ariz. 313, 316 ¶ 14 (2018) (internal quotation marks and citations omitted).

¶34 In applying the single subject rule, a legislative "subject" entails "all matters having a logical or natural connection," *Litchfield Elementary Sch. Dist. No. 79 of Maricopa Cnty. v. Babbitt*, 125 Ariz. 215, 224 (App. 1980) (quoting *Johnson v. Harrison*, 47 Minn. 575, 577 (1891)), and must be essential to the accomplishment of one main objective, *Black & White Taxicab Co. v. Standard Oil Co.*, 25 Ariz. 381, 393–94 (1923). Thus, compliance with the rule requires that "all matters treated . . . should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject." *Litchfield*, 125 Ariz. at 224. An act violates the rule if it includes "dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other." *Id.* An act that violates the single subject rule is entirely void because no mechanism is available for courts to discern the primary subject of the act. *See id.* at 226.

¶35 Here, SB 1819 contains fifty-two sections and spans approximately thirty distinct subjects, including matters ranging from dog racing, the lottery, voter registration, election integrity, the Governor's emergency powers, the Board of Trustees' duties and powers, the definition of "newspaper," political contributions, management of the state capital museum, and COVID-19.

¶36 The State contends that the bill's sweeping array of topics, standing alone, does not preclude their inclusion under a broad conception of the title's reference to "budget procedures." Enacting wide varieties of legislation may be essential to achieving one purpose, but that is not the case here. The only identified purpose here, as reflected in the title, is the budget. But the contested sections do not relate to the budget at all; they are devoid of any reference or significance to budget procedure. Absent such a common tie between this diverse category of topics, we cannot conclude that these sections fall under "one general idea," or render them germane to one general subject. Our conclusion is inescapable: SB 1819 contains an array of discordant subjects that are not reasonably connected to one general idea, and certainly not to budget procedures.

¶37 An act that violates the single subject rule is void in its entirety because no mechanism is available for courts to discern the act's primary subject. *Litchfield,* 125 Ariz. at 226 ("Any inquiry into dominant purpose of whether 'logrolling' occurred is, in the final analysis, a factual inquiry. Such

an inquiry injects the courts more deeply than they should be into the legislative process. We do not believe, in view of the clear terms of the constitutional prohibition, that courts should speculate as to what might or might not have been in terms of the political process."). Therefore, because we hold that SB 1819 violates the single subject rule, and we must refrain from endeavoring to ascertain the dominant purpose of the bill, it is unconstitutional and entirely void.

¶38 We note that this Court, in *Clean Elections Institute, Inc. v. Brewer*, stated that severance is the proper remedy for a violation of the single subject rule. 209 Ariz. 241, 243 ¶ 5 (2004). There, we did not resolve the challenge to a voter initiative on single subject rule grounds, but rather juxtaposed the effect of a violation of that rule against the "separate amendment rule" of article 21, section 1 of the Arizona Constitution. Notably, the opinion did not address *Litchfield*, which reached the opposite conclusion in holding that severance is not a remedy for a single subject rule violation. 125 Ariz. at 226 ("Since the enactment in question is infected by reason of the combination of its various elements rather than by any invalidity of one component, the otherwise salutary principle of severance and partial savings of valid portions does not apply. We are constrained to agree with and adopt the general rule that the entire act must fall."). We must conclude that *Clean Elections* conflated the title requirement and single subject rule in analyzing remedies for an article 13 violation. We embrace *Litchfield* and clarify that severance is not a proper remedy for a single subject rule violation.

## III.

¶39 The State contends any holding that SB 1819 violates the single subject rule should only apply prospectively because no court has ever applied the rule to invalidate a BRB. We are unpersuaded.

¶40 "Whether an opinion will be given prospective application only is a policy question within this court's discretion." *Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 596 (1990). In Arizona, an opinion in a civil case typically applies retroactively as well as prospectively. *Id.* "In *Chevron Chemical* [*Co. v. Superior Court*, 131 Ariz. 431, 436 (1982)], we approved a three-part test to determine whether this presumption of retroactivity has been overcome and a decision should be applied prospectively only." *Id.* We consider whether: (1) "the decision establishes a new legal principle by

overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed"; (2) "retroactive application will further or retard operation of the rule, considering the prior history, purpose, and effect of the rule"; and (3) "retroactive application will produce substantially inequitable results." *Id.*

**¶41** Here, all three *Chevron Chemical* factors weigh in favor of retroactive application of our opinion. First, we do not announce a new standard today by applying the single subject rule's plain meaning. To the contrary, this Court has previously noted its concern about the legislature's failure to comply with the rule. *See Bennett*, 206 Ariz. at 528 ¶ 39 ("Had the legislature addressed these subjects in separate bills, there would be no need to determine whether they were or were not appropriations. Thus, the problem we face is in part created by apparent non-adherence to the single subject rule in the legislative process."). Second, retroactive application of the rule, alone, will further the purpose of the single subject rule. Third, retroactive application will forestall inequitable results because it implements the rule's fundamental purpose to prevent log-rolling.

**¶42** The State asserts that retroactive application of our opinion may precipitate an avalanche of challenges to past budgets, thus throwing our state into fiscal turmoil. We do not share the State's concern. As Plaintiffs acknowledged during oral argument, the doctrine of laches or other equitable defenses would likely preclude such challenges to past budgets in which bills were never challenged and funds have long since been expended. Thus, in practical terms, our opinion will apply only to the budget challenges here and in future cases.

## IV.

**¶43** Plaintiffs argue that section 12 of HB 2898, which prohibits mask and COVID-19 vaccine mandates for public but not private schools, violates Arizona's equal protection clause. *See* Ariz. Const. art. 2, § 13. Like the trial court, we decline to address this issue because it is moot in light of our holding that HB 2898 is constitutionally infirm on other grounds.

## V.

**¶44** Plaintiffs request attorney fees pursuant to the private attorney general doctrine. That doctrine is an equitable rule that allows a

court to award fees to "a party who has vindicated a right that (1) benefits a large number of people, (2) requires private enforcement, and (3) is of societal importance." *Ansley v. Banner Health Network*, 248 Ariz. 143, 153 ¶ 39 (2020). Here, Plaintiffs' challenge to the constitutionality of four bills satisfies the criteria for an attorney fee award under the private attorney general doctrine. *See Meyer v. State*, 246 Ariz. 188, 195–96 ¶¶ 25–31 (App. 2019) (awarding fees to legislators successfully challenging the constitutionality of a law); *Ariz. Ctr. for Law in Pub. Interest v. Hassell*, 172 Ariz. 356, 371 (App. 1991) (awarding fees to private litigants successfully contesting the constitutionality of legislation). We therefore exercise our discretion to award reasonable attorney fees to Plaintiffs.

## CONCLUSION

**¶45** We respect the role of the legislature in the discharge of its constitutional duties, including in its budgetary processes, and we heed our constitution's fundamental premise that the division of powers necessarily impels judicial restraint, particularly in the realm of lawmaking. Ariz. Const. art. 3. But this Court's constitutional duty to interpret and apply the constitution requires us to invalidate a law if it infringes the constitution. Thus, today we do not intrude upon the legislature's unique constitutional authority; instead, we merely exercise our own such authority to interpret, apply, and enforce the Arizona Constitution's command that the legislature's acts comply with the title requirement and the single subject rule.

**¶46** We affirm the judgment of the trial court ruling the noncompliant portions of HB 2898, SB 1824, SB 1825, and SB 1819 are unconstitutional in violation of the title requirement, and that SB 1819 is also unconstitutional and void in its entirety in violation of the single subject rule.

BOLICK, J., concurring.

**¶47** I agree entirely with my colleagues' reasoning and disposition. I write separately only to reiterate my belief, expressed at length in a prior case, that the "manageable standards" inquiry in the political question context, *see infra* ¶ 23, is not constitutionally mandated, and abdicates the judiciary's central role in determining whether the political branches have traversed their constitutional boundaries. *State v. Maestas*, 244 Ariz. 9, 15 ¶¶ 25–35 (2018) (Bolick, J., concurring). The controversy here is not a political question because the constitution does not assign to the legislature the power to finally determine whether its bills comply with the title requirement or single subject rule.